**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-06-380 (6) |
| | § | C.A. No. C-09-37 |
| CATARINO GUTIERREZ, JR., | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Movant Catarino Gutierrez, Jr.'s ("Gutierrez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  (D.E. 345.)[1]  The government has filed a response and motion for dismissal.  (D.E. 354.)  Gutierrez filed a reply (D.E. 356), which the Court has also considered.  For the reasons set forth below, the Court DENIES Gutierrez's motion. Additionally, the Court DENIES Gutierrez a Certificate of Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II.  FACTS AND PROCEEDINGS**

**A.    Summary of Offense[2]**

The charges against Gutierrez stemmed from his participation in the Gutierrez drug trafficking organization ("DTO").  The DTO engaged in the wide scale distribution of marijuana and

---

[1]  Dockets entries refer to the criminal case, C-06-cr-380.

[2]  The offense conduct as set forth herein is derived from Paragraphs 4 through 47 of Gutierrez's Presentence Investigation Report ("PSR").

cocaine from the Rio Grande Valley of Texas to areas north including Tennessee, Arkansas, and New York, and received drug proceeds from those areas. The offense was committed from a base of operations situated on a ranch owned by Leonel Martin Gutierrez, who was Gutierrez's cousin, and Leonel's wife. Leonel and his wife owned and operated G Trucking as a cover for the DTO. The ranch was set up with a metal storage building, behind the main residence, that was used as a staging area for loading narcotics into vehicles. Several vehicles were located at the ranch as well as equipment used to compress marijuana into easier to handle bales. The ranch was routinely guarded by watchers and armed security and was accessible by a main gate which was opened by remote control.

According to his PSR, Gutierrez was a money launderer and also recruited individuals for both Leonel and Rudolpho Gutierrez, who was another organizer/leader and a main narcotics smuggler and money launderer in the DTO. The specific seizures or other conduct in which Gutierrez directly participated included the following:

     1.    Gutierrez loaded a 140-kilogram marijuana shipment that was seized on November 26, 2003;

     2.    Gutierrez loaded a 453.6 kilogram load of marijuana that was successfully delivered to Memphis in January 2004;

     3.    In June 2004, Gutierrez delivered $35,000 in drug proceeds to two couriers in Memphis, who then successfully transported the $35,000 to Leonel;

     4.    Gutierrez conducted counter-surveillance while a shipment of marijuana consisting of 898 kilograms of marijuana was loaded onto a trailer at Leonel's residence and the load was seized on July 10, 2004;

     5.    On September 3, 2004, Gutierrez asked a co-conspirator to drive a load of marijuana to Indiana, but the co-conspirator could not do so on that date. In the month preceding that date, the co-

conspirator had driven four to five loads of marijuana for Gutierrez and allegedly not been paid.   Nonetheless, on the same date, Gutierrez asked the co-conspirator to deliver a fuel card and a broken seal to the driver of the trailer, which the co-conspirator did; and

6.     A cooperating co-conspirator testified that Gutierrez assisted in loading marijuana and cocaine onto trailers at Leonel's residence at least monthly prior to May 2006, for an unspecified number of months.

Additionally, there were a number of other loads seized from co-conspirators, as well as other successful loads which were the result of the conspiracy and his co-conspirators actions.  (See generally PSR at ¶¶ 4-47.)  Pursuant to the United States' representations and approximation given at the rearraignment, Gutierrez was only held responsible at sentencing for 7,733 kilograms of marijuana.  As noted by the PSR, however, the undisputed seizures of marijuana and successfully delivered marijuana (conservatively estimated) was in the range of 3,000 to 10,000 kilograms of marijuana, also establishing a base offense level of 34.  (PSR, Addendum at 1-2 (responding to defense objections to the amount of marijuana attributed to Gutierrez as relevant conduct).)

## B.     Criminal Proceedings

On April 11, 2007, Gutierrez was charged in one count of a second superseding indictment with conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. (D.E. 149.) On March 7, 2008, Gutierrez pleaded guilty pursuant to a written plea agreement.  (D.E. 264, 265.)

During the rearraignment, the Court specifically inquired about the relevant conduct in this case.  The following exchange occurred:

[AUSA] HAMPTON:  I believe that this Defendant's going to be a Level 34.   There's going to be less than 10,000 kilograms of

3

marijuana involved in this conspiracy, and less than 50 kilograms of cocaine involved in this conspiracy.

THE COURT:  Do you agree with that, Mr. Diaz?

[DEFENSE COUNSEL] MR. DIAZ: Yes, Your Honor.  We don't know anything about cocaine.  We do about the marijuana.

MS. HAMPTON: The cocaine involved, there was cocaine involved in this conspiracy, as listed as the dates in the indictment, Your Honor.  The evidence would show that this Defendant, while he was part of the conspiracy, did not help in the loading of the cocaine.  He was helping with the loading of the marijuana.

THE COURT:  So you're not going to put on any evidence that he, that attributes cocaine to him, just marijuana?

MS. HAMPTON:  That's correct, Your Honor.

THE COURT:  And how much marijuana again for him?

MS. HAMPTON: The amount seized was 7,733 kilos.  I believe it's going to be less than 10,000 kilograms for this Defendant, which would be a Level 34, Your Honor.

THE COURT: Okay.  Do you agree with that, Mr. Diaz?

MR. DIAZ:  I agree with that, Your Honor.

THE COURT:  Do you agree with that, Mr. Gutierrez?

THE DEFENDANT:  Yes, Your Honor.

(D.E. 318, Rearraignment Transcript ("R. Tr.") at 15-16.)

Consistent with the above discussion at the rearraignment, the Amended PSR scored Gutierrez at a base offense level of 34.  Gutierrez initially objected both to the PSR's refusal to grant him a minor role reduction and to the amount of drugs attributed to him, arguing that he should only be held responsible for 2,712.5 kilograms.  (PSR at ¶ 59.)  Specifically, he claimed that one of the seized loads, consisting of over 5,000 kilograms, was not part of the conspiracy.  Because of his

4

objection to the amount of drugs, and because he had agreed at his rearraignment to the larger amount, the PSR did not recommend an adjustment for acceptance of responsibility.  This, his total offense level was determined to be a 34.  (PSR at ¶¶ 52-62.)

Before sentencing, however, Gutierrez indicated that he was withdrawing his objection to relevant conduct, although still seeking a reduction for his minor role in the offense.  (D.E. 282) At sentencing, Gutierrez's counsel reiterated this position.  (D.E. 319, Sentencing Transcript ("S. Tr.") at 6-7.)

The Court thus heard testimony from the case agent concerning Gutierrez's role in the offense.  (S. Tr. at 11-19.)  The Court ultimately overruled the defense objection.  (S. Tr. at 20.)  The Court determined, however, that because Gutierrez had withdrawn his objection to the relevant conduct, it would follow the recommendation of the United States to award him an adjustment for acceptance.  (S. Tr. at 20.)  Accordingly, the Court found that Gutierrez's advisory guideline range for a term of imprisonment, based on his offense level of 31 and his criminal history category of III, was 135 to 168 months.  (Id.)

The Court sentenced Gutierrez to 150 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $100 special assessment.  (S. Tr. at 22.  The Court explained that it selected the approximate middle of the guideline range because of Gutierrez's "equivocation on relevant conduct."  (S. Tr .at 22.)  Specifically, the Court stated:

> Though I accepted your attorney's recommendation and Ms.
> Hampton's to not remove your acceptance of responsibility, you still
> equivocated and did not, urged your attorney to file a spurious
> objection after you had already admitted to something under oath at

> the time of sentencing (sic) .  And then here today you were shaking
> your head no with various and sundry representations by the
> Government.

(S. Tr. at 22.)

Gutierrez appealed.  On appeal, he argued that this Court erred in denying him a two-level minor role adjustment under U.S.S.G. § 3B1.2.  (D.E. 349 at 1.)  The Fifth Circuit rejected his argument and confirmed his sentence.  (D.E. 349 at 2.)

Gutierrez's § 2255 motion was received by the Clerk ion March 2, 2009. (D.E. 345.)  It is timely.

### III.  MOVANT'S ALLEGATIONS

In his § 2255 motion, Gutierrez asserts three grounds for relief.  First, he argues that he was denied effective assistance of counsel because his counsel failed to object to the relevant conduct finding in the PSR at the time of sentencing.  (D.E. 345 at 9.)  Specifically, he claims that he asked his counsel to challenge the additional 5,020.5 kilograms but that his counsel told him if he contested that conduct, "you will not be able to plea bargain, for the Government will no longer accept any agreed bargain."  He further contends that he was "coached" to only respond "yes" to the Court's questions, and not to assert his "innocence" to the attributed relevant conduct.  (Id.)  In his reply, Gutierrez claims that counsel "coercively advised" him to abandon his objection, "using as a whip the (3) point acceptance of responsibility."  (D.E. 356 at 2.)

Second, Gutierrez argues that the Court erred in finding him responsible for 7,733 kilograms of marijuana.  (D.E. 345 at 10-11.)  Again, he claims that a May 6, 2006 load of 5,020.5 kilograms seized from co-conspirator Jose Gutierrez should not have been attributed to him.  He claims that he "had no knowledge, entered no agreement, neither loaded or unloaded, transported, nor ran

6

interference for Jose's load" and that this "load was outside the Gutierrez trafficking organization," (D.E. 356 at 4.)  Third , he argues that it was improper for the Court to deny Gutierrez a reduction for his mitigating role in the offense.  (D.E. 345 at 10.)

The United States argues that Gutierrez's claims that the Court erred at sentencing are procedurally barred from consideration.  It further contends that, even if they were properly before the Court, none of this claims entitle him to relief.

For the reasons set forth herein, the Court concludes that Gutierrez is not entitled to relief as to any of his claims.

## IV.  DISCUSSION

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

### B.    Procedural Bar

Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d

427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice; or (2) that he is actually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

Although Gutierrez's counsel initially objected to the relevant conduct, that objection was withdrawn at sentencing, with Gutierrez's consent on the record. (S. Tr. at 10-11.) Additionally, the issue was never raised on appeal. Accordingly, the claim that the Court erred in determining the relevant conduct attributable to Gutierrez is procedurally barred from consideration here.

According to Gutierrez, he was "coercively advised" and "coached" to agree to withdraw the objection, but he really did not want to. This is insufficient to demonstrate either "cause and prejudice" or "actual innocence" in order to overcome the procedural bar. In any event, even if the claim were properly a part of these proceedings, however, it does not entitle him to relief, as discussed infra at Section IV.D.

Similarly, Gutierrez's claim that the Court erred in refusing to grant him a reduction for playing only a minor role in the offense is also barred from consideration here because this precise issue was raised and rejected on appeal. (See D.E. 349.) Thus, it cannot be considered here. United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (affirming district court's refusal to entertain the defendant's § 2255 motion). Indeed, it has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." Kalish, 780 F.2d at 508.

The only claim properly before the Court is Gutierrez's claim that counsel was ineffective for failing to object (or withdrawing the objection) to the relevant conduct. A claim of ineffective

8

assistance of counsel is properly made for the first time in a § 2255 motion because it raises an issue of constitutional magnitude and generally cannot be raised on direct appeal. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002); United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). Thus, the Court addresses the merits of Gutierrez's ineffective assistance claim.

**C.      Ineffective Assistance of Counsel**

**1.      General Standards**

Gutierrez's ineffective assistance claim is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To establish prejudice as a result of alleged errors at sentencing, a § 2255 movant must show that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th

Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 2.    Claim That Counsel Erred in Withdrawing Objection to Relevant Conduct

Gutierrez claims that his counsel was constitutionally ineffective for not objecting to the amount of drugs attributed to him.  As an initial matter, counsel initially objected (at Gutierrez's request), but later withdrew the objection.  The withdrawal was with Gutierrez's consent, as Gutierrez himself told the Court at sentencing. (S. Tr. at 10-11.)  Counsel David Diaz explains what occurred as to this issue.  Specifically, he states that he informed Gutierrez that if he denied the relevant conduct, the Court would conduct a hearing and might not grant him acceptance of responsibility. (D.E. 354-2 at 3.) Diaz flatly denies that he told defendant during sentencing to only say "yes."  He states that he pointed out to his client that a number of witnesses were ready to testify against Gutierrez and that if he continued to deny his relevant conduct he would more than likely not get a three-level decrease for acceptance of responsibility.  (D.E. 354-2 at 3.)

Counsel's analysis of the situation was sound and his advice was in no way deficient.   As noted by counsel and as stated by the prosecuting AUSA at sentencing, there were a number of witnesses available to testify as to Gutierrez's involvement in various loads moved by the DTO. Notably, even without the 5,020.5 kilograms Gutierrez now challenges, there were sufficient amounts of drugs and money involved in the conspiracy to support the Level 34 base offense level. That is, the level was applicable to  amounts of at least 3,000 kilograms but less than 10,000 kilograms of marijuana.  Subtracting the 5,020.5 kilograms, there were still 2,712.5 kilograms seized, an additional 1,317 kilograms not seized, 31 kilograms of cocaine seized, and approximately $172,320 seized.  Even ignoring the cocaine and currency, and relying just on seized and unseized

loads of marijuana, there were more than 3000 kilograms attributable to Gutierrez as relevant

conduct without including the 5,020.5 load.

For all of these reasons, had Gutierrez persisted in his objection to relevant conduct, it is very likely that, not only would the objection have been overruled, but he would not have received a three-level adjustment for acceptance of responsibility. Had that happened, his total offense level would have been 34 instead of 31 and his guideline range would have been significantly higher. In short, there was no valid basis for challenging the relevant conduct, and counsel was not deficient for withdrawing the objection. Indeed, in doing so, counsel was able to retain Gutierrez's 3-level adjustment for acceptance of responsibility. Thus Gutierrez cannot establish either deficiency or prejudice as to this claim, and it fails.

**D.   Court's Alleged Errors At Sentencing**

To the extent Gutierrez is making a direct claim that the Court erred at sentencing, as to either its determination on relevant conduct or its denial of a role adjustment, those claims are barred from consideration as discussed supra at IV.B.  Additionally, to the extent he is challenging the district court's application of the guidelines, such a claim is not cognizable here.  United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999).

Moreover, Gutierrez has wholly failed to show any error by the Court.  As affirmed by the Fifth Circuit, there was ample evidence that Gutierrez was not a minimal participant nor a minor participant in this offense.  He acted as a decoy, he conducted surveillance, he loaded a number of loads of illegal drugs and he recruited several individuals for the DTO.  His role was in no way "minor."  Indeed, the Fifth Circuit has affirmed the denial of a role adjustment where a defendant's involvement in the offense was significantly less than Gutierrez's, holding that neither a defendant's

status as a first time offender nor his claims to be a courier require an adjustment for minor participant status. United States v. Lujan-Sauceda, 187 F.3d 451, 452 (5th Cir. 1999); Buenrostro, 868 F.2d at 137-38. Moreover, Gutierrez was involved (whether via loading, transporting money or acting as surveillance or a decoy) in a far greater number of loads than many of his co-conspirators. Under these facts, Gutierrez simply did not qualify for a minor role reduction. Cf. Lujan-Sauceda, 187 F.3d at 452; U.S.S.G. § 3B, appl. n. 5 (a minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal"). Thus, the Court did not err in its denial of a role adjustment.

Similarly, the relevant conduct found by the Court was amply supported by the record in the case, in addition to Gutierrez's admissions at his rearraignment. The district court has broad discretion in considering the reliability of submitted information regarding the quantity of drugs involved in an offense. United States v. Huskey, 137 F.3d 283, 291 (5th Cir. 1998). The defendant bears the burden of showing that the information relied upon by the district court is materially untrue. United States v. Cooper, 274 F.3d 230, 240 (5th Cir. 2001). "In making [a finding regarding drug quantities], the district judge may consider any information that has 'sufficient indicia of reliability to support its probable accuracy,' including a probation officer's testimony, a policeman's approximation of uncovered drugs, and even hearsay." Huskey, 137 F.3d at 291; see also United States v. Ramirez, 271 F.3d 611, 612 (5th Cir. 2001); United States v. Cuellar-Flores, 891 F.2d 92, 93 (5th Cir. 1989).

In this case, Gutierrez's own admissions at the rearraignment established the amount of drugs. Also, the amount of drugs as found by the Court as relevant conduct was buttressed by the statements of numerous co-conspirators, as well as actual amounts seized as part of the conspiracy.

12

For these reasons and for the reasons set forth in the preceding section, Gutierrez has not shown that the Court erred in imposing a Level 34 base offense level.

For the foregoing reasons, Gutierrez's claims do not entitle him to relief.  Accordingly, his motion pursuant to 28 U.S.C. § 2255 is DENIED.

**E.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Gutierrez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").[3]

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484

---

[3] As of December 1, 2009, absent contrary Congressional action, amended Rule 11(a) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS will become effective. This rule will require a district court to issue or deny a COA at the time the court enters a final order adverse to the movant.  Although amended Rule 11(a) is not yet effective, the practice it requires is a sound one that the Court employs now.  Nothing in the current version of the § 2255 rules prohibits the Court from addressing a COA prior to a notice of appeal being filed.

(2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Gutierrez's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Accordingly, Gutierrez is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the aforementioned reasons, Gutierrez's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 345) is DENIED.  Additionally, Gutierrez is DENIED a Certificate of Appealability.

It is so ORDERED this 1st day of July, 2009.

Janis Graham Jack
United States District Judge

14